AMERITECH PUBLISHING, INC., APPELLANT, *v.* WILKINS, TAX COMMR., APPELLEE.

[Cite as *Ameritech Publishing, Inc. v. Wilkins,*
111 Ohio St.3d 114, 2006-Ohio-5337.]

(No. 2005–1862—Submitted June 7, 2006—Decided November 1, 2006.)

MOYER, C.J.

{¶ 1} The issue in this case is whether Ameritech Publishing, Inc., appellant, owes Ohio use tax on the price that it paid R.R. Donnelley & Sons Company for services performed in the production of telephone directories for distribution in Ohio.

{¶ 2} Ameritech distributed telephone directories to customers in Ohio between March 1, 1996, and December 31, 1998. Ameritech had negotiated a price for the paper for the directories from various paper mills, and those paper mills delivered the paper directly to Donnelley in Illinois. Donnelley then printed the directories for Ameritech and shipped them to Ohio for distribution. Pursuant to a contract between Ameritech and Donnelley, Donnelley also provided "paper management services" to Ameritech, through which Donnelley ensured that the paper arrived at the printing plant in Illinois at the right time, checked the quality of the paper, and visited the paper mills to ensure that those mills were complying with applicable laws and contracts. The paper mills sent invoices for the paper to Donnelley, which in turn billed Ameritech for the paper and for Donnelley's paper-management services and printing services. The price that Donnelley billed Ameritech for the paper-management services was 4.04 percent of the cost of the paper used in producing the telephone directories for Ameritech.

{¶ 3} As a result of an audit of Ameritech for the period March 1, 1996, through December 31, 1998, the Tax Commissioner concluded that Ameritech owed more than $218,000 in unpaid use taxes, penalties, and interest charges on the amount that Ameritech had paid Donnelley for paper-management services during the audit period.

{¶ 4} The Tax Commissioner rejected Ameritech's petition for reassessment, concluding that Ameritech owed use tax on the paper-management fee paid to Donnelley because the service provided by Donnelley was "not a service independent from the sales of products" to Ameritech. The Board of Tax Appeals

("BTA") affirmed, holding that the fee for services had been "paid in conjunction with the sale of tangible personal property." The matter is before this court as an appeal as of right.

{¶ 5} In reviewing a BTA decision, this court determines whether that decision is reasonable and lawful. *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783; R.C. 5717.04. We "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 6} It is the taxpayer's burden to prove "the manner and extent of the error in the Tax Commissioner's final determination." *Stds. Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. A statute granting an exemption from taxation "must be strictly construed," and a taxpayer "must affirmatively establish his or her right" to the exemption. *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8.

{¶ 7} R.C. 5741.02(A) levies a tax on "the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." The consumer that realizes the benefit of a service is liable for use tax on the price of that service. R.C. 5741.02(B). Under R.C. 5741.01(M) and 5739.01(X), however, the only services taxable in Ohio are those denoted in R.C. 5739.01(B)(3), and during the audit period, neither printing services nor paper-management services were listed. Am.Sub.H.B. No. 215 ("H.B. 215"), 147 Ohio Laws, Part I, 909, 1802–1803; Am.Sub.S.B. No. 266 ("S.B. 266"), 146 Ohio Laws, Part VI, 10735, 10737–10738.

{¶ 8} In contrast, the use of most tangible personal property is subject to the Ohio use tax, and that tax applies to both the use of paper and the use of printed materials. See R.C. 5739.02 (sales tax is "levied on each retail sale made in this state"); R.C. 5741.02(C)(2) (providing that the use tax does not apply to an acquisition of tangible personal property or services that "would be a sale not subject to the [sales] tax imposed by sections 5739.01 to 5739.31 of the Revised Code"); R.C. 5739.01(B)(1) (" 'Sale' and 'selling' include * * * [a]ll transactions by which title or possession, or both, of tangible personal property, is or is to be transferred"); R.C. 5739.01(B)(4) (" 'Sale' and 'selling' include * * * [a]ll transactions by which printed, imprinted, overprinted, lithographic, multilithic, blueprinted, photostatic, or other productions or reproductions of written or graphic matter are or are to be furnished or transferred"); R.C. 5739.01(B)(5) (" 'Sale' and 'selling' include * * * [t]he production or fabrication of tangible personal

property for a consideration for consumers who furnish either directly or indirectly the materials used in the production of fabrication work").

{¶ 9} Donnelley purchased paper on Ameritech's behalf and produced telephone directories for Ameritech by transforming raw materials into a finished product. Donnelley then transferred possession of the finished product to Ameritech in Ohio. That transaction was a "sale" as that term is defined in R.C. 5739.01(B). We must decide whether the 4.04 percent paper-management fee that Donnelley charged Ameritech when it sold the paper to Ameritech should be treated as part of the price of the paper itself. See R.C. 5739.025 (imposing use tax on the "price" that is paid).

{¶ 10} The version of R.C. 5739.01(H)(1) in effect during the audit period defined "price" for sales- and use-tax purposes as "the aggregate value in money of anything paid or delivered * * * in the complete performance of a retail sale, without any deduction on account of the cost of the property sold, cost of materials used, labor or service cost * * * or any other expense." H.B. 215, 147 Ohio Laws, Part I, at 1807 and S.B. 266, 146 Ohio Laws, Part VI, at 10742. Thus, the price for a product produced and sold by a vendor is the full amount paid for that product, including any charges for services rendered by the vendor in the production of the finished product. Accordingly, the paper-management fee that Ameritech paid Donnelley was part of the price of the paper. That fee was designed to compensate Donnelley for its efforts to ensure that the correct quantity and quality of paper arrived timely at Donnelley's printing plant so that Donnelley could print the telephone directories and ship them to Ameritech in Ohio.

{¶ 11} Ameritech maintains that the paper-management fee should not be included as part of the price of the paper for use-tax purposes, because the statutory language excludes from the definition of "sale" and "selling"—and therefore excludes from the sales and use tax—any "personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made." R.C. 5739.01(B)(5).[1]

{¶ 12} We have held that "[i]n a * * * personal service transaction in which the charge for the services is not separated from the charge for the property, if the overriding purpose of the purchaser is to obtain tangible personal property produced by the service, the transfer of the property is a consequential element of the transaction and the entire transaction is taxable. If the purchaser's overriding purpose is to receive the service, the transfer of the personal property is an inconsequential element of the transaction, and the entire transaction is not

---

1. The version of R.C. 5739.01(B)(5) in effect during the audit period contained virtually identical language. H.B. 215, 147 Ohio Laws, Part I, at 1804; S.B. 266, 146 Ohio Laws, Part VI, at 10738.

taxable." *Emery Industries, Inc. v. Limbach* (1989), 43 Ohio St.3d 134, 539 N.E.2d 608, paragraph four of the syllabus.

{¶ 13} "Personal service" as used in R.C. 5739.01(B)(5) means "any intellectual or manual act involving a recognized skill performed by a person who is specifically engaged by the purchaser to perform the act." Id. at 136, 539 N.E.2d 608. Even if the paper-management service that Donnelley provided was a "personal service" under R.C. 5739.01(B)(5), Ameritech still must demonstrate that the transfer of tangible personal property here was an inconsequential element of the transaction by showing that the overriding purpose of the transfer was not to obtain the property but to receive the service.

{¶ 14} The transfer of the directories to Ameritech from Donnelley cannot be described as an inconsequential element of the transactions between those two companies. The production of telephone directories and the transfer of those tangible objects was the very purpose of the business relationship between Donnelley and Ameritech, as their contract makes clear. The paper-management services that Donnelley provided under that contract were intended to facilitate the efficient production of high-quality bound books for Ameritech. There is nothing inconsequential about the transfer of those books to Ameritech; the R.C. 5739.01(B)(5) exclusion does not apply to the transaction.

{¶ 15} The fact that Donnelley listed the 4.04 percent paper-management fee separately from the price of the paper itself on the invoices sent to Ameritech does not change this conclusion. The fee was part of the "aggregate value * * * paid" by Ameritech in return for Donnelley's delivery of the paper, and it was therefore part of the price of that paper under former R.C. 5739.01(H)(1), even though listed separately on the invoices.

{¶ 16} To be sure, the version of R.C. 5739.01(H)(1) in effect during the audit period required vendors to list any "charge for tangible personal property" separately from any charge for "providing a service" so that the sales tax could be "correctly computed and charged." H.B. 215, 147 Ohio Laws, Part I, at 1808; S.B. 266, 146 Ohio Laws, Part VI, at 10742. That language has no relevance in this case because "providing a service" as defined during the audit period by R.C. 5741.01(M), 5739.01(X), and former R.C. 5739.01(B)(3) did not include providing paper-management services. Ameritech was not required under former R.C. 5739.01(H)(1) to separately state the charge for paper-management services, and listing the charges for those "services" separately from charges for tangible, personal property did not carry any talismanic significance for sales- or use-tax purposes under R.C. 5739.01(B)(5).

{¶ 17} The fee for the paper-management services performed by Donnelley compensated Donnelley for the "labor or service cost" associated with "the complete performance" of Donnelley's contractual promise to deliver paper to

Ameritech. See former R.C. 5739.01(H)(1), H.B. 215, 147 Ohio Laws, Part I, at 1807 and S.B. 266, 146 Ohio Laws, Part VI, at 10742. Because sales or use tax is collected on the full price of retail sales under R.C. 5739.025, Ameritech owes use tax on the total amount paid to Donnelley, including the 4.04 percent fee.

{¶ 18} The decision of the BTA affirming the Tax Commissioner's order was reasonable and lawful.

{¶ 19} For the foregoing reasons, we affirm the decision of the Board of Tax Appeals.

Decision affirmed.

BRYANT, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

THOMAS F. BRYANT, J., of the Third Appellate District, sitting for RESNICK, J.

---

Jones Day, Maryann B. Gall, and Laura A. Kulwicki, for appellant.

Jim Petro, Attorney General, and Cheryl D. Pokorny, Deputy Attorney General, for appellee.